475 So.2d 331 (1985)
STATE of Louisiana
v.
Kenneth SMITH.
No. 85-K-0066.
Supreme Court of Louisiana.
September 10, 1985.
Dissenting Opinion September 18, 1985.
Rehearing Denied October 31, 1985.
*332 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William Campbell, Mary Charlotte McMullan, Maria Lazarde Reuther, Asst. Dist. Attys., for plaintiff-respondent.
Dwight Doskey, George Hesni, for defendant-applicant.
DENNIS, Justice.
The question presented by this case involves an interpretation of the criminal definition of forgery. La.R.S. 14:72. This criminal code section creates and defines the crime of forgery in two separate ways: (1) the false making or altering, with intent to defraud, of any writing purporting to have legal efficacy and (2) the issuing or transferring, with intent to defraud, of a forged writing, known by the offender to be a forged writing. We must decide whether the two kinds of forgery are cumulatively punishable in a situation in which a single instrument is forged and transferred by the same person.[*]
Kenneth Smith was convicted of two counts of attempted forgery, La.R.S. 14:72, 14:27, adjudicated a multiple (second) offender, La.R.S. 15:529.1, and sentenced concurrently to six years imprisonment on each count. On appeal, Smith's convictions and sentences were affirmed. 461 So.2d 417 (La.App. 4th Cir.1984).
Defendant Smith opened an account with a check cashing service which John Mothershead operated from a booth located in the Woolworth's Drugstore on Canal Street in New Orleans. A few days later, on May 4, 1983, Smith and a companion, Giles McGee, attempted to cash a Social Security check payable to one "Jose Gonzales" at Mothershead's booth. McGee had the check in his possession, and it had previously been endorsed in the name of the payee. *333 Mothershead requested identification, and when McGee could produce none, demanded that he endorse the check again. McGee complied, endorsing the check in the name of Jose Gonzales. Smith also assured Mothershead that McGee was in fact Jose Gonzales, the payee of the check. Mothershead remained suspicious, principally because the name "Jose Gonzales" was incongruous with McGee's physical characteristics, and retained the check. He called a store security officer, who detained the pair until they were arrested by New Orleans policemen.
Smith and McGee were jointly charged with forgery. After McGee entered a guilty plea, he was given a suspended sentence and placed on probation. Smith entered a plea of not guilty and was tried by a judge without a jury. Jose Gonzales testified that he did not know Giles McGee or Kenneth Smith and had not given either permission to endorse his check. Smith was convicted of attempted forgery as a principal in the false endorsement of the check and of attempted forgery as a principal in the attempted transfer of the forged check to Mothershead.
Defendant Smith argues that his two separate convictions and sentences violate the constitutional ban of double jeopardy. The Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also against multiple punishments for the same offense. Whalen v. U.S., 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without first determining what punishments the legislative branch has authorized. Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); Albemaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Whalen v. U.S., supra; Gore v. U.S., 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Bell v. U.S., 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).
In the present case, therefore, if the legislature has not authorized cumulative punishments for forgery by false making and forgery by false issuing committed in the course of making and transferring a single false writing, the defendant has been impermissibly sentenced. The dispositive question, therefore, is whether the legislature did so provide.
There is a strong societal interest in having the community free from instruments that purport to have legal effect, but are not in fact genuine. Innocent persons may lose money or property on the strength of false writings, or may be harmed by them in some other way; and if false instruments become at all common in a given community, this fact places a serious handicap upon the use of genuine paper, because of the uncertainty aroused. Perkins on Criminal Law, p. 340 (2d ed. 1969).
Hence, the common law prohibited both the fraudulent creation and the fraudulent alteration of an instrument, and applied the label "forgery" to both. Furthermore, the common law punished both the forgery and the guilty "uttering" of forged instruments. The recognition of two crimes was no doubt originally due to the desire to prevent one man from knowingly uttering what another man had forged, as well as to prevent the original forgery itself. There are also important problems of law enforcement. One man may have in his possession one or more forged instruments obviously prepared by him; but there may be no proof of his actually having uttered such an instrument. Another man may be arrested in the very act of passing a forged instrument. There may be abundant proof of his knowledge that the writing was false, but no clear evidence that it was prepared by him or under his direction. It would unreasonably handicap the enforcement of justice if either set of facts was insufficient for conviction. Id.
*334 At common law forgery and uttering are two distinct offenses, see State v. Boasso, 38 La.Ann. 202 (1886), but under some statutes they have been coupled together in the same section, under the name of "forgery." See Perkins on Criminal Law p. 355. Whether a person convicted of both forging and uttering a single instrument may be subjected to cumulative penalties appears to be res nova. One state supreme court has stated in dicta, however, that one guilty of forging and uttering an instrument under such a statute is guilty of but one offenseforgery. State v. Singletary, 187 S.C. 19, 196 S.E. 527 (1938). See Perkins, supra p. 356 n. 14.
The statute at issue in the present case, La.R.S. 14:72, which couples forgery and uttering together in the same section, was adopted in 1942 as part of the Criminal Code. The antecedent legislation and meagre legislative history are not very helpful. In some of the previous acts the two offenses were set forth as different offenses in separate sections; in others they were combined in sections pertaining to specific types of instruments. See La. R.S. 833-35, 873, 875-76 (1870); La. Acts 1896, No. 67, § 1; 1918, No. 204 § 1; 1934, No. 136, § 2. The Criminal Code section, La.R.S. 14:72, was heralded as a simple definition which replaced a statutory monstrosity that filled a solid page of type enumerating an infinite number of documents which may be the object of forgery. Morrow, The Louisiana Criminal Code of 1942, 17 Tul.L.Rev. 1, 11 (1942).
The problem of multiple punishment is a vexing and recurring one. As Chief Justice Warren observed, it arises in two broad contexts:
(a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both proscriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a bank, though violative of two statutes, might warrant but a single punishment.
Gore v. United States, 357 U.S. 386, 393-394, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405, 1411 (1958). (Warren, C.J., dissenting.)
In every instance the problem is to ascertain what the legislature intended. Where it has failed to make its intention manifest, courts should proceed cautiously, remaining sensitive to the interests of defendant and society alike. All relevant criteria must be considered, and the most useful aid will often be common sense. Id.
In this case we are persuaded that the purpose of the statute is to make sure that a prosecutor has two avenues by which to prosecute one who deals with forged instruments, not to authorize two cumulative punishments for the defendant who consummates the fabrication and transfer of a single writing.
The defendant's conduct in this case involved a single transaction including two "units" of proscribed conduct under a single section of the Criminal Code having a single penalty provision. This situation is wholly different from, for example, three violations of three separate sections created at three different times, all to the end of dealing more strictly with, and seeking to throttle by different legal devices, the traffic in narcotics. Gore v. U.S., 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). The societal interest served by prohibiting the fraudulent creation or alteration of writings, that of having the community free from instruments that are not genuine, is the same as that furthered by outlawing the uttering of forged instruments; whereas the societal interest served by a burglary statute, protection of occupied dwellings, may be viewed as distinct from that of a murder statute, which protects the security and value of the person. See *335 Whalen v. U.S., 379 A.2d 1152 (D.C.C.A. 1977); Hall v. U.S., 343 A.2d 35 (D.C.C.A. 1975); Note, Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties, 67 Yale L.J. 916 (1958). Moreover, if it had been the legislative aim to create separately punishable crimes, the result could have been accomplished easily and with certainty, rather than by indirection. In adopting the Criminal Code, however, the legislature did not employ any of the means at its disposal, to prevent a merger of the former common law offenses, e.g., separate sections, separate crime names, or separate penalty provisions.
We conclude, therefore, that when the legislature made a crime of either false uttering or false making and altering, it intended the maximum punishment for a completed transaction of forgery and uttering to be ten years, but that, even if the culprit should fall short of accomplishing his purpose, or even if he should only perpetrate a designated part of the fraudulent operation, he could still be imprisoned for ten years.
Although reasonable minds may differ on this conclusion, it is consistent with our policy of not attributing to the legislature an intention to punish more severely than the language of its criminal statutes clearly indicates in the light of pertinent legislative history. State v. McCarroll, 337 So.2d 475, 479 (La.1976); see also Whalen v. United States, 445 U.S. 684, 691-92, 100 S.Ct. 1432, 1437-38, 63 L.Ed.2d 715 (1980); Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955); Western & Drubel, Toward a General Theory of Double Jeopardy, 1978 S.Ct.Rev. 81, 166-22.
This court has noted the prejudicial effect of concurrent sentences when one of the sentences is based upon an improper conviction. We have held that when multiple punishment has been erroneously imposed, the appropriate procedure at the appellate level is to eliminate the effect of the judgment as to one offense. State v. Doughty, 379 So.2d 1088, 1091 (La.1980).
Accordingly, the conviction and sentence for attempted forgery on the first count is affirmed, and the conviction and sentence for the second count of attempted forgery are vacated. Otherwise, the judgment of the court of appeal is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
MARCUS, and BLANCHE, JJ., dissent and assign reasons.
WATSON, J., dissents for reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
In La.R.S. 14:72, the legislature provides for two types of forgery, that is, a person will be liable if he either makes or knowingly transfers a forged document. Committing either type of forgery subjects one to a maximum penalty of ten years imprisonment and a five thousand dollar fine. The legislature clearly intended for the crime of uttering the forged document to be applicable, not only to subsequent holders who knowingly transfer it, but also to the maker, who after falsifying the instrument, issues it to another. The making and the issuing of a forged instrument are separate and distinct acts of forgery, i.e., two separate crimes. If a person violates both the first and the second provisions by making and issuing the forged document, he should be punished separately for each crime. Had the legislature not intended for the maker to be penalized for the issuance of the forged instrument, it would not have made issuance a separate crime. It could easily have limited the applicability of the second provision to transfers by subsequent holders. Imposing separate punishments for the making and the issuance of the instrument is constitutionally permissible. The double jeopardy clause prohibits multiple punishments for the same offense. Two offenses are not the same if each one has an element which the other does not. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In La.R.S. 14:72, the false making *336 or altering is an element of the first offense but not of the second, whereas issuing or transferring is an element of the second, but not of the first. Hence, the double jeopardy clause does not prohibit imposing separate punishments on defendant. Accordingly, I respectfully dissent.
BLANCHE, Justice (dissenting).
I must disagree with the majority's interpretation of LSA-R.S. 14:72. Before Act 136 of 1934, the crimes of forgery and uttering were without doubt two crimes in Louisiana. See, e.g., State v. Boasso, 38 La.Ann. 202 (1886). They remain two crimes in 13 of the 16 states that have decided the issue. See State v. DeGina, 42 N.C.App. 156, 256 S.E.2d 275 (1979); Bronstein v. State, 355 So.2d 817 (Fla.Ct.App. 1978); Anderson v. State, 553 S.W.2d 85 (Tenn.Ct. of Crim.App.1977).
The majority finds that the legislature in enacting Act 136 of 1934 intended to make the two crimes one. However, the change in the law was intended to simplify the statutory scheme itself; it was not intended to simplify the job of the courts. As one of the reporters who drafted the code commented:
The writer was never more in earnest when he states as explicitly as he can that the whole success of the Code depends on the judicial attitude.... The courts must realize that if the Code is to represent the advance for which it has been hailed, and is to produce the clean break with the obsolescence of the past, there must be an equally clean break with old methods of interpretation.... When it was anticipated, and, in fact, well accepted, that criminal statutes would be strictly construed, it was natural for draftsmen of criminal statutes to try to be comprehensive by specifically enumerating every conceivable situation.... It is high time for Louisiana to stop making the administration of criminal law a game in the common law fashion. The draftsmen have done their best to produce a change by presenting a generalized Code, without enumerations of infinite specific situations, which is not geared to a common law approach.... But it is hoped that they [the courts] will not try to outdo themselves, but will accept the Code in the spirit in which it was written and give full effect to its broad, general language.
Morrow, The Louisiana Criminal Code of 1942, 17 Tul.L.Rev. 1, 11-12 (1942).
The majority opinion ignores the warning of Professor Morrow. This writer feels that the narrow interpretation given the statute by the majority is counter to the spirit of the code and the broad interpretation envisioned by its reporters.
NOTES
[*] The defendant also assigned two other errors, but after reviewing the record we have determined they lack merit.