817 So.2d 1131 (2002)
STATE of Louisiana
v.
Darian ROBINSON.
No. 2001-K-0273.
Supreme Court of Louisiana.
May 17, 2002.
*1132 Edward K. Bauman, Lake Charles, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Scott D. Peebles, Counsel for Respondent.
WEIMER, Justice.
We granted a writ in this case to determine whether the defendant was denied his constitutional right to confront a witness who testified against him. After reviewing the record and the applicable law, we hold that the trial court deprived the defendant of his right to confrontation by improperly restricting cross-examination of the witness and that the error was not harmless. Accordingly, we reverse the defendant's conviction and remand this case to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY
On June 3, 1998, at approximately 9:00 p.m., Officers Rhett Charles and Joe Tallant of the New Orleans Police Department were on routine patrol when they turned the corner from Columbus Street onto the 1500 block of North Robertson Street and observed two males engaged in an argument. One of the men, later identified as James Williams, approached the marked police vehicle. He reported that the defendant had been selling narcotics in front of his apartment building at 1532 North Robertson. Mr. Williams was extremely agitated and very angry, shouting to the officers that he wanted the defendant away from his property. The officers separated the two men, with Officer Charles accompanying Mr. Williams *1133 and Officer Tallant taking control of defendant.
Officer Tallant removed the defendant to the passenger side of the police car and patted him down. He found $120.00 in cash on defendant's person, which he returned to the defendant while he checked defendant's I.D. for outstanding warrants. In the meantime, Mr. Williams told Officer Charles where he could find defendant's drugs. Pursuant to Mr. Williams' instructions, Officer Charles climbed onto a railing and reached into the gutter above Mr. Williams' front door from which he retrieved a cigarette paper containing several pieces of a rock-like substance. When Officer Charles showed Officer Tallant what he had found, the defendant fled, leaving his I.D. behind. The officers obtained a warrant for defendant's arrest based on information contained in defendant's I.D., which indicated that he lived in the 1500 block of North Robertson, only four or five houses away from the apartment complex.
Defendant was subsequently arrested and charged by bill of information with possession of cocaine with the intent to distribute. Waiving his right to a jury trial, defendant proceeded to trial before the district judge.
The State called three witnesses to testify against defendant at trial: Officer Charles, Officer Tallant, and Mr. Williams. The two police officers testified about events leading up to their arrest of defendant. For his part, Mr. Williams denied flagging down the police officers on the evening of June 3, 1998, but did testify that he asked the officers to get defendant away from his front door because defendant was trespassing. According to Mr. Williams, he was angry because the defendant was selling drugs from Williams' front porch. While Mr. Williams acknowledged that he showed the officers where defendant hid his drugs and that he knew where they were because he had seen defendant put them there, he later testified that he did not know if defendant was selling drugs from that location. He explained that he was nervous about testifying because there had been threats on his life.
Defendant took the stand and testified on his own behalf. He denied that the crack cocaine found in the gutter belonged to him. He testified that he knows Mr. Williams from the neighborhood, knows that Mr. Williams has a "problem," and that Mr. Williams just "clicked out" on him. He denied having threatened Mr. Williams or having directed others to threaten him. He explained that he fled when the police discovered the cocaine because he did not want to be charged with a crime he had not committed.
Following the close of testimony, defendant was found guilty as charged. After defendant waived all delays and requested immediate sentencing, the trial judge sentenced defendant to seven and a half years at hard labor. Defendant appealed, and the court of appeal affirmed his conviction and sentence. See State v. Robinson, 99-2236 (La.App. 4 Cir. 11/29/00), 772 So.2d 966 (Plotkin, J., dissenting). This court granted certiorari to address defendant's contention that he was denied his constitutional right to confrontation by the trial court's ruling limiting his cross-examination of key prosecution witness, James Williams.

DISCUSSION
In his sole assignment of error, the defendant complains that the trial court erred by refusing to allow defense counsel to cross-examine the state's witness, Mr. Williams, regarding his history of mental problems.
Mr. Williams, the complainant, was called to testify as a witness for the prosecution. On direct examination, he testified *1134 to the events transpiring on the evening of June 3, 1998. Much of his testimony appears defensive, confused and at times, nonsensical.[1] On cross-examination, the defense sought to impeach Mr. Williams' credibility by inquiring into his mental state. The following exchange occurred:
DEFENSE: Sir, do you receive disability assistance at this time?
STATE: Objection, Your Honor.
WITNESS: I'm invoking the Fifth Amendment.[2]
DEFENSE: Judge, I need to ask this question.
COURT: I need you to not ask him any of his personal business.
DEFENSE: Judge, then I need to put something in the record outside, or approach the bench or something. This is a crucial; a crucial point in this case.
COURT: I will allow you to put anything you want on the record; but not ask him that question.
Later, outside the presence of the witness, defense counsel explained that he believed that the witness was suffering from a mental disability for which he was receiving disability benefits, and that he wished to question him regarding that disability because "this witnesses' [sic] disability particularly pertaining to a mental condition are [sic] as important as the ability to see and the ability to hear." Defense counsel stated that while it was not his intention to embarrass or cause harm to the witness, the Sixth Amendment to the United States Constitution guarantees an accused the right to cross-examine the witnesses against him. Counsel explained:
And in that regard I wanted to present the following questions to him. Number One: If in fact he is receiving government disability on which he took the Fifth Amendment. Second of all; let me find out exactly what is the basis on which he is receiving government disability, which I believe will result in the fact that it is a psychological disability which, is an impairment which hinders his ability to be a witness, to testify and effectively come forward and bring the testimony on Direct that he is bringing on my client, and bring it on to an effective cross-examination.
In furtherance of that, I wanted to determine the exact disability and if there were any medication on which he is [sic]. And furthermore, if there were any medications which he were [sic] required should be structured to be under [sic] and he was not under it at this time this incidence [sic] was before the Court. And at which time he was acting apparently, extremely irate to offer testimony in this case.
In furtherance of that I believe there would be two additional questions as far *1135 as his treatment or his medical condition or his disability or psychological conditions which severely deflect [sic] his direct testimony that he has given in connection with this case, and severely jeopardize my client's ability to cross-examine and defend himself in this case.
Despite defense counsel's explanation as to the purpose and particulars of his line of questioning and its relevance to his cross-examination, the trial judge did not permit further inquiry by counsel.
The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. See Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923, 928 (1965). The confrontation clause of our state constitution specifically and expressly guarantees each accused the right "to confront and cross-examine the witnesses against him." See La. Const. art. 1, § 16, titled "Right to a Fair Trial."
Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 5 J. WIGMORE, EVIDENCE § 1395, p. 123 (3d ed.1940)). Cross-examination is the principal means by which believability and truthfulness of testimony are tested.[3] Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness. See Davis v. Alaska, 415 U.S. at 316, 94 S.Ct. at 1110; State ex rel. Nicholas v. State, 520 So.2d 377, 380 (La.1988); State v. Hillard, 398 So.2d 1057, 1059-1060 (La. 1981).
Generally, to attack the credibility of a witness, a party may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony. See LSA-C.E. art. 607(C); State ex rel. Nicholas v. State, 520 So.2d at 380. One of the main methods of attack upon the credibility of a witness is to show a defect of capacity in the witness to observe, remember, or recount matters. Id. For this reason, this court has held that mental abnormality, either at the time of observing the facts or at the time of testifying, will be provable on cross-examination or by extrinsic evidence, as bearing on credibility. See State v. Morris, 429 So.2d 111, 120 (La.1983); see also State v. Luckett, 327 So.2d 365, 372 (La.1975) (on rehearing) ("[D]efects of capacity, sensory or mental, which would lessen the ability to perceive the facts which the witness purports to have observed, are provable to attack the credibility of the witness, either upon cross-examination or producing other witnesses to prove the defect."). It is just as reasonable that a fact finder be informed of a witness' mental incapacity as it would be for the fact finder to know that the witness suffered an impairment of hearing or sight. The witness' mental capacity relates to the ability to comprehend, know and correctly relate the truth. See United States v. Partin, 493 F.2d 750, 762 (5th Cir.1974).
*1136 In this case, defense counsel sought to cross-examine the witness regarding his mental state. Given the tenor of the witness' testimony on direct examination, which, as noted, appeared confused and at times nonsensical, such a line of questioning was entirely appropriate. Defense counsel had a right to attempt to challenge Williams' credibility with relevant evidence of any mental defect or treatment, either at the time of the incident or the time of testifying.
Although the case law does not provide a consistent test for determining when a Sixth Amendment violation occurs, the Supreme Court has held that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness and thereby expose facts from which the trier of fact could appropriately draw inferences relating to the reliability of the witness.[4]See Delaware v. Van Arsdall, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); Olden v. Kentucky, 488 U.S. 227, 231, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988). In this case, defense counsel sought to establish that the only prosecution witness who could link the defendant to the illicit narcotics recovered from the gutter above the witness' front door suffered from a mental disability which affected his ability to recall, perceive and/or recount the events of June 3, 1998, accurately and truthfully. The judge might have received a significantly different impression of the witness' credibility had defense counsel been permitted to pursue his proposed line of cross-examination. See Delaware v. Van Arsdall, 475 U.S. at 680, 106 S.Ct. at 1436.
It appears from the record that the trial court may have acted with the best of intentions in limiting the cross-examination by defense counsel, as the witness, even under direct examination by the State and at the urging of the prosecutor to tell the truth, appeared to have been extremely nervous and frightened at the prospect of testifying against the defendant in a drug case. While a trial court may impose reasonable limits on defense counsel's inquiry challenging the credibility of a prosecution witness to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive or only marginally relevant," Delaware v. Van Arsdall, 475 U.S. at 679, 106 S.Ct. at 1435, the trial court in this instance was overly protective of this witness. The court's ruling shielded the witness from relevant questions directed towards his mental state and thereby deprived the defendant of his opportunity to confront the witness on relevant matters. See United States v. Owens, 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988) ("It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even ... the very fact that he has a bad memory.").
The State argued that no evidence in the case suggested that, in fact, the witness was on disability, much less that his disability stemmed from mental problems. However, while extrinsic evidence of the witness' disability was not presented (and is not claimed to have existed), *1137 the witness' testimony appeared confused and nonsensical to such an extent as to lead one to conclude that it was reasonable for defense counsel to question the witness' mental status. When it is apparent from a witness' response to questioning that the witness may labor under a deficiency, some latitude must be provided to the cross-examiner to explore the deficiency in order to preserve the defendant's Sixth Amendment rights. Moreover, defense counsel in this instance did provide the court with a particularized statement of what he thought he could establish on cross-examination if given the chance. The trial court's ruling did not rest on a finding that the defense was pursuing baseless allegations as a means of harassing an already frightened witness, but reflected the court's agreement with the State that defense counsel had no right to delve into the witness' "personal business."[5] This ruling was in error. Concern for the witness' reluctance to come forward, while an appropriate concern, cannot justify the exclusion of cross-examination with the potential to demonstrate the unreliability of the witness' testimony especially here, where the witness' responses appear to demonstrate the confused nature of the witness' mental state.
Confrontation errors are subject to a Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 478; State v. Wille, 559 So.2d 1321, 1332 (La.1990).
The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438.
Here, Mr. Williams' testimony was central, indeed crucial, to the prosecution's case. His testimony was the only evidence linking the defendant with the drugs recovered by police officers from the gutter above Mr. Williams' front door. Mr. Williams' testimony was conflicting, at times nonsensical, and reflected some type of confusion or possible mental disturbance on his part.[6] Evidence as to his mental *1138 status, either at the time of the incident or at trial, would have been highly probative of the reliability of his testimony. Given these facts, we find "beyond a reasonable doubt" that the restriction on defendant's confrontation right was not harmless.[7]

CONCLUSION
For the reasons assigned, the defendant's conviction and sentence for possession of cocaine with the intent to distribute is reversed and set aside, and the case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED TO THE TRIAL COURT.
VICTORY and TRAYLOR, JJ., dissented and filed opinions.
VICTORY, J., dissenting
As the majority opinion acknowledges, the defendant does not claim that extrinsic evidence of William's alleged disability exists. Although the trial court offered the defendant the opportunity to put any evidence showing such a disability or the record, the defendant failed to do so. Further, as noted by the majority and Justice Traylor in his dissent, the trial court stated: "I will allow you to put anything you want on the record, but not ask him that question." [emphasis added]. The question was: "Do you receive disability assistance at this time?"
Under these circumstances, I see no error in the trial court's ruling and dissent from the majority opinion.
TRAYLOR, J. dissenting
Based upon the record before this court, I would find no abuse of discretion by the trial court in sustaining the prosecutor's objections to the defense cross examination of Williams regarding his receipt of disability assistance. The court instructed, "I will allow you to put anything you want on the record; but do not ask him [if he receives disability assistance]." Subsequent to this exchange between the defense counsel and the court, the defense declined to continue questioning the witness regarding his alleged mental incapacity and stated that he had no further questions of the witness.
Various ways are recognized as proper to attack the credibility of a witness who has testified to facts occurring at the time of the offense. This includes questioning regarding defects of capacity, sensory or mental, which lessen the ability to perceive the facts which the witness purports to have observed, are provable to attach the credibility of the witness, either upon cross-examination or by producing other witnesses to prove the fact. State v. Luckett, 327 So.2d 365, 373 (La.1975); See La. Code Evid. art. 607(B)-(D). Clearly, a defect in capacity may result from a mental defect.
Bearing this in mind, the defense was only restricted from questioning Williams regarding his receipt of disability benefits and was not improperly restricted in its efforts to explore the subject of the victim's mental state. Consequently, in my view, there was no denial of defendant's Sixth Amendment right to confrontation as *1139 alleged by defendant. The defense simply failed to put evidence on the record challenging Williams' mental state. For these reasons, I would affirm the court of appeal in upholding defendant's conviction and sentence.
NOTES
[1] For example, when questioned as to whether he was upset with the defendant because the defendant had been selling narcotics in front of his apartment, Mr. Williams replied: "Yes. Finally the man upstairs must have fixed it for me. I can't lie. I got to tell the truth. I had to push them off the porch. I know I can't stop them from doing but I can try to help but they don't do it. Just the man upstairs turn the table on them." Later, when asked to explain what he meant by the "man upstairs," Mr. Williams replied: "These are two different conversations with two different people. Once it's been explained. You're trying to cause complication for me with something that doesn't have anything to do with that."
[2] We have consistently held that a witness may invoke the Fifth Amendment privilege against self-incrimination only when he has reasonable cause to apprehend danger of self-incrimination from a direct answer. See State v. Brown, 514 So.2d 99, 109 (La.1987). The witness' enigmatic response to the question posed seems to provide a further indication that he might be laboring under some type of mental disability.
[3] Cross-examination has been referred to as the "greatest legal engine ever invented for the discovery of truth." California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970) (quoting 5 J. WIGMORE § 1367).
[4] While this test speaks to impeachment directed at showing bias, we have recognized that the existence of a Sixth Amendment violation should not depend upon the category of impeachment, but upon whether the defendant was prevented from using any impeachment that would have been potentially effective in his case. See State ex rel. Nicholas v. State, 520 So.2d at 381-382.
[5] Given the trial court's insistence that defense counsel not ask the witness "any of his personal business," the court of appeal's opinion that defense counsel was not prohibited from inquiring as to any alleged mental problems of the witness, only as to his receipt of disability benefits, is incorrect. Out of the presence of the witness, defense counsel explained to the trial court exactly what he hoped to establish and the trial court neither amended nor clarified the previous ruling prohibiting this line of questioning.
[6] For example, Mr. Williams initially testified that the defendant was selling drugs on his front porch. Later he stated that he did not know if he had seen defendant selling drugs. He was confused as to what time of day the incident occurred and testified, contrary to the arresting officers, that it was "bright daytime." On direct examination, when testifying to the events of June 3, 1998, he made reference to the "man upstairs" fixing things. When asked by the prosecutor if he remembered what the prosecutor had told him prior to testifying, he stated that he could not "remember all those things," although the prosecutor finally jogged his memory by asking: "You can't remember what I told you when I said to tell the truth?"
[7] The defendant in this case opted for a bench trial. While the fact that this was a bench trial may have lessened the impact of the error, it does not necessarily make it harmless, particularly when, as here, the error involves erroneous limits on cross-examination. See State v. Welch, 99-1283 (La.4/11/00), 760 So.2d 317.