GREMILLION, Judge.
hThe Defendant, Francisco Jesus Vasquez-Ramirez, appeals his conviction for Indecent Behavior with a Juvenile, a violation of La.R.S. 14:81, and his sentence of twenty years with hard labor without benefit of parole. For the reasons that follow, we affirm.
FACTS
Alejandra Hargrave, a teacher at Ridge Elementary School in Duson, Louisiana, noticed that the victim, Y.M.R., and her sister were absent from school for three weeks before Easter 2014. When Mrs. Hargrave learned the girls were at their aunt’s house in Pennsylvania, she contacted the aunt, the girls’ mother (who had been deported to Guatemala), and a lawyer about obtaining guardianship of the girls. When the girls’ mother signed the paperwork, Mrs. Hargrave and her husband went to Pennsylvania to get the girls. The girls returned to Louisiana the last week of May 2014. Sometime after the girls returned, Mrs. Hargrave noticed a yellow fluid on the victim’s panties and noticed the victim was “itching all the time.” The victim’s sister told Mrs. Hargrave that the victim was sexually molested by a man at their old house.
When Mrs. Hargrave asked the victim, the victim said she was raped by a man named “Francisco.” Mrs. Hargrave called the girls’ mother in Guatemala and learned that Francisco’s full name was Francisco Vasquez-Ramirez. According to Mrs. Har-grave, the victim said Francisco touched her vagina and “butt” with his fingers and penis. The victim told Mrs. Hargrave the touching started when she was in the second grade, which would have been in 2013. Mi’s. Hargrave called the police.
| ¡¿Detective George Crowder with the Lafayette Parish Sheriffs Office testified that the victim told him Francisco touched her vagina every day when she and her sister came home from school. Detective Crowder witnessed the victim’s Hearts of Hope interview, at which time the victim gave the same or similar statements to the interviewer.
The victim’s interview took place at Hearts of Hope on August 27, 2014. The victim was eight years old at the time of the interview. The victim stated that before her present living arrangement, she lived with a lot of adult men in one house, and every day when she returned from school, one of the men touched her bottom. The victim said the man’s name was Francisco, and he would touch her with his “pee pee” underneath her clothes and inside her bottom. According to the victim, it happened more than one time—every day when she came home from school. The victim’s sister would also be in the room. When asked if Francisco touched her with any other part of his body, the victim said, “No.” Later in the interview, the victim said Francisco used his hand to touch her in her “front bottom” and “back bottom.” When asked if Francisco did anything else to make her feel uncomfortable, the victim said he kissed her on her mouth twice. At trial, the victim identified the Defendant as the Francisco that had done the things she described in her Hearts of Hope interview.
In the interview, when asked if anyone else tried to do something to her, the victim said the brother of her mom’s boyfriend did the same thing to her as Francisco. The victim said it was easier to call this other person “F.” When asked if “F” did the exact same thing to her as Francisco or something different, the victim said something different. The victim also said *524 that “F” did these things to her at the same house that Francisco touched her. When asked what part of “F’s” body touched her, the victim said the same as Francisco—inside her bottom and |sher front bottom. Again, only her sister saw this happen. According to the victim, her mom was in Guatemala when this happened. The victim said that “F” was on television and was suspected of doing the same thing to other kids.
On September 25, 2014, the Defendant, Francisco Jesus Vasquez-Ramirez, was charged by bill of information with one count of molestation of a juvenile (age seven), a violation of La.R.S. 14:81.2. On October 3, 2014, the Defendant entered a written plea of not guilty to the charge. On March 30, 2015, an interpreter was appointed for the Defendant and jury selection began.
On cross-examination at trial, the victim explained that before she moved to Duson, Louisiana, she lived in North Carolina with her biological mom (Aldalena) and her biological dad (Tierfalo). According to the victim, her mom left her biological father, but she did not know why. When the victim moved to Duson in 2012, Orbe-lio (her mom’s boyfriend) and Jaime (a male), lived in the house with her. The victim did not remember if the Defendant lived in the house at that time. Between 2012 and 2014, Felencio (the brother of her mom’s boyfriend) lived in the house. When specifically asked if the Defendant was living in the house at any point, the victim said he was already living in the house when she arrived in 2012. Although the victim did not know the Defendant’s name at that time, she later learned his name was Francisco Vasquez-Ramirez. The victim testified that her mom’s boyfriend (Orbelio Ramirez) was the Defendant’s nephew. According to the victim, the brother of her mom’s boyfriend would normally open the door for them after school. When the boyfriend of the victim’s mom would return from work, “Mr. Ramirez” would be with him.
On cross-examination, it was determined that the victim actually made two trips to Pennsylvania—one with her biological mom and one after her biological mom returned to Guatemala.
RDuring defense counsel’s extensive cross-examination of the victim regarding her trips to Pennsylvania, the State objected to defense counsel’s “endless fishing expedition on a trip to Pennsylvania and coming back.” The trial court denied the objection, finding the victim was on cross and defense counsel was not badgering the witness. Defense counsel resumed questioning the victim regarding her trips to Pennsylvania and then began questioning the victim as to the details of her life at home after her mom went back to Guatemala. During this line of questioning, the State asked to approach the bench and asserted an objection: “I want to object. We’re going over a million details about what time she comes home from school, who picks her up - - ” The trial court denied the objection, stating the following:
Listen, the jury is as uncomfortable as you are. That’s [defense counselj’s deal. Okay? I know what you’re saying. And I can see the face of the jury. They don’t like it, either. But that’s what he’s doing, so he’s doing it. Okay?
Defense counsel resumed questioning the victim about the details of her home life and then launched into the following colloquy:
Q. Okay. All right. Now, let’s get to the hard questions, at this point. All right? Now, you’ve made - - You remember the little video you did over at Hearts of Hope?
A. (No response).
*525 Q. The little video you did with the young lady questioning you about some things that Mr. Ramirez allegedly done to you?
A. Yes, sir.
Q. All right. Now, what I want to ask you is this: When did this touching thing first start?
A. When I was about seven years old.
Q. Seven years old?
A. Yes, sir.
|fiQ. That would have been in 2013?
A. Yes, sir.
Q. Okay. Now, I know this is a hard question, but do you remember the time of the year it started? Was it in - - like, around Easter or Christmas? Thanksgiving?
A. No, sir.
Q. When did it first start?
A. I don’t know, sir.
Q. You don’t know?
A. No, sir.
Q. When did it end?
A. I don’t know, sir.
Q. You don’t know that, either?
A. No, sir.
Q. Who did you first tell this to?
A. A lady - - (Witness began to cry).
When defense counsel offered to take a break, the trial judge asked the victim if she wanted to see her mom for a minute. The victim nodded in the affirmative, and the court took a ten-minute break. At the end of the break, the State informed the court that the victim had “broken down” and could not take any further questioning. Counsel for the defense then moved for dismissal of the case. The trial court, instead, ruled that much time had been “wasted” questioning the victim about trips to Pennsylvania, and counsel’s questioning of the witness was going to be limited to ten-to-fifteen minutes. The trial court further stated that more time might be allowed. Counsel objected and asked for an immediate writ of review to this court, which was denied.
| ijAfter another break, the victim returned to the courtroom with her mother. The jury also returned to the courtroom, and the trial judge instructed the guardian to stand behind the victim while the victim sat on the stand. Defense counsel asked for a sidebar, during which time the State asked that the victim’s guardian be allowed to stand behind her during the remainder of her testimony, which the trial court allowed over objection. Counsel for Defendant then elected to not proceed with further cross-examination. The State then rested, and Defendant proceeded with his defense.
Orbelio Ramirez testified that he used to be in a relationship with the victim’s mom, and the victim was like his daughter. After the victim’s mom returned to Guatemala, Orbelio took care of the victim and the victim’s sister for approximately six months. According to Orbelio, the Defendant was his uncle, and the Defendant did not, have any responsibility for taking care of the victim and her sister. Orbelio testified that he and the Defendant worked together from 7:00 in the morning until 4:00 or 5:00 in the afternoon. Sometimes Orbelio could not give the Defendant a ride home, so another person would take the Defendant home in the afternoon.
When the Defendant lived with Orbelio, there were four or five males living in the apartment. The victim, Orbelio testified, never told him the Defendant was doing something to her in a sexual way. When asked if the Defendant ever had an occasion to be alone with the victim, Orbelio replied: “Okay. I couldn’t - - Honestly, I can’t say that he did or didn’t, because I - - It just didn’t happen.”
*526 Through an interpreter, the Defendant testified at trial. He testified that he was twenty-five years old, married, with two daughters. He moved to Louisiana from Guatemala to work and support his family. When asked how he got to work, the Defendant replied that he would sometimes ride with his nephew, Orbelio. The |7Pefendant would get home from work by either riding with Orbelio or with other people. The Defendant normally got home between 4:00 and 5:00. When asked if he ever got home and found the victim alone, the Defendant replied, “No. I always found her with her daddy.” The Defendant denied ever touching the victim improperly. When asked if he was ever alone with the victim, the Defendant replied, “I never was alone with her. In front of God, I say that. I don’t understand why she’s accusing me, because I don’t understand that, at all.”
After Defendant rested his case and arguments, the jury convicted the Defendant of the responsive verdict of indecent behavior with a juvenile under the age of thirteen. On June 25, 2015, the trial court sentenced the Defendant to twenty years at hard labor, without the benefit of parole. The Defendant orally moved for reconsideration of sentence and subsequently filed a written motion to reconsider the sentence on July 9, 2015. On July 10, 2015, the trial court denied the motion with written reasons.
ASSIGNMENTS OF ERROR
The Defendant contends that the following errors were committed by the trial court:
1.The trial court erred by setting a time limitation on the defense’s cross-examination of Y.M.R., thereby depriving Appellant of full cross-examination and a fair trial.
2. The trial court erred in permitting the legal guardian of Y.M.R. to stand behind her during a portion of the cross-examination of Y.M.R., thereby depriving Appellant of a fair trial.
3. The upper range sentence imposed upon Francisco Vasquez Rameriz [sic] is excessive and in violation of the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution.
^ANALYSIS
Defendant argues the trial court’s limitation of defense counsel’s cross-examination of the victim to ten minutes interfered with his constitutional right to confront his accuser. Instead of limiting the time for cross-examination, Defendant argues, the trial court “should have allowed cross-examination to continue and, when appropriate, limit counsel from asking questions which would fit under one of the grounds noted in Delaware v. Van Arsdall, 475 U.S. 673 at 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).” Some of these grounds for limiting cross-examination, Van Arsdall stated, were “harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.” Id., 475 U.S. at 679, 106 S.Ct. 1431.[1] Defendant explains that his counsel’s cross-examination in the present case was highly relevant:
The prosecutor relied exclusively on the videotaped interview as to the allegations the child made against Appel *527 lant, and then chastised the defense for “traumatizing” the child during cross-examination, when counsel attempted to gather sufficient information to establish inconsistencies in the child’s story... .In the forensic interview, the child said that Francisco had taken her to Pennsylvania and left her with the aunt. This act could have been construed by the jury as supervision over the child. On cross-examination, the child testified that it was Orbelio Ramirez who had taken them to Pennsylvania... .Counsel also questioned her in detail about what she did when she came home from school and who was present when she arrived home. Again, this line of questioning was highly relevant as Y.M.R. stated during the forensic interview that this was the time period when Francisco would touch her—everyday when she came home from school. Again, during cross-examination, she admitted that Francisco was not home during this time. She also admitted that Francisco would usually come home with Orbelio.
Defense counsel was placed in a difficult position. Whether to question the child in detail and establish the inconsistencies and impossibilities in the child’s forensic interview and suffer the wrath of the jury in putting the child through vigorous cross-examination, or |9allow the interview to go unquestioned. Counsel chose to question the child in detail. Although the questioning had just gotten to the actual allegations when the child broke down, counsel had already established that Francisco did not have supervision or control over the child—an element of the charged offense. Counsel also requested a break for the child when he realized she was upset.
(Record references omitted).
Defendant further argues that had the State anticipated the victim would have difficulty on cross-examination, it could have attempted to have the victim testify by closed-circuit television as provided for in La.R.S. 15:283. Thus, Defendant argues, the trial court had other alternatives to protect the victim rather than setting a time limitation on cross-examination.
Confrontation Clause errors are subject to a harmless error analysis. State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801. We are to inquire “whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.” Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431. The Van Arsdall court named additional factors we are to consider in making such an inquiry:
the importance of the witness’ testimony in the prosecution’s case,
whether the testimony was cumulative,
the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,
the extent of cross-examination otherwise permitted, and,
the overall strength of the prosecution’s case.

Id.

The Louisiana Supreme Court has stated the following regarding the defendant’s constitutional right to confront witnesses and the trial court’s responsibility to exercise reasonable control over the manner of cross-examination:
| ipThe right to confront witnesses is ensured in both the federal and state constitutions. The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution “to be confronted with the witnesses against him.” La.Const. art. 1, § 16 guarantees each accused the right *528 “to confront and cross-examine the witnesses against him.”
This court has held that “[c]onfrontation means more than being allowed to confront the witnesses physically. ‘The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.’ ” State v. Robinson, 2001-0273 p. 6 (La. 5/17/02), 817 So.2d 1131, 1135, citing Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (internal citation omitted). Cross-examination has been termed “the principal means by which believability and truthfulness of testimony are tested.” Robinson, 2001-0273 p. 6, 817 So.2d at 1135.
Under the code of evidence, “a witness may be cross-examined on any matter relevant to any issue in the case, including credibility.” La.C.E. art. 611(B). The trial court is empowered to exercise reasonable control over the manner of cross-examination so as to (1) ensure the effectiveness of the interrogation as a mode of ascertaining the truth; (2) avoid the needless consumption of time; and (3) protect witnesses from harassment or undue embarrassment. La. C.E. art. 611(A). “Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness’ story to test the witness’ perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness.” Robinson, 2001-0273 p. 6, 817 So.2d at 1135. The ruling of the trial court as to the scope and extent of cross-examination should not be disturbed absent an abuse of the court’s broad discretion.
State v. Draughn, 05-1825, pp. 47-48 (La. 1/17/07), 950 So.2d 583, 615-16, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
However, the trial court “retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits” over the interrogation of witnesses. Van Arsdall, 475 U.S. at 679, 106 S.Ct. 1431. In State v. Hillman, 613 So.2d 1053 (La.App. 3 Cir.), writ denied, 617 So.2d 1181 (La.1993), this court addressed the defendant’s claim that the trial court erred in interrupting his cross-examination of the victim. Because the victim appeared to be on the verge of breaking down, the trial court recessed the victim’s testimony and allowed another witness to testify. I^After another witness testified, the victim returned to the witness stand and completed her testimony. This court found no error in the trial court’s decision to interrupt the victim’s testimony:
By interrupting the cross-examination of the ten year old victim, the trial judge gave her an opportunity to regain her composure and her ability to respond to questions. This “recess” or procedure made the questioning and presentation of the victim’s testimony on cross-examination more effective for the ascertainment of the truth. There is no evidence that the victim was coached in her responses during this recess, or that the timing of the recess deprived defendant of any beneficial impact of cross-examination. Trial counsel for defendant was considerate of the difficulty the ten year old victim was having trying to recall the acts of molestation, and none of the questions on cross-examination should be considered embarrassing or harassing. The unusual circumstances of this case required the trial judge to exercise his inherent judicial powers and interrupt the witness’ cross-examination in order for her to regain her composure and her ability to respond to questions. The trial judge did not limit the scope of *529 the State’s or defendant’s examination of the victim. We find no error in the judge’s decision to interrupt the victim’s testimony.
Hillman, 613 So.2d at 1060. Likewise, in the present case, the trial court did not limit the scope of defense counsel’s cross-examination of the victim. Additionally, even though the trial court told defense counsel he would be limited to ten to fifteen minutes, the trial court also suggested that it would give defense counsel a little more time if he was in the middle of questioning the victim. There is no indication that defense counsel could not have adequately cross-examined the victim in the time allotted. As the trial court noted, Defendant had cross-examined the victim for forty-five minutes before she broke down.
In light of the above, we find this assignment of error lacks merit.
In his second assignment of error, Defendant argues that allowing the victim’s legal guardian to stand behind her during the remainder of his counsel’s cross examination was highly prejudicial, as it demonstrated sympathy on the trial judge’s part. He argues, in essence, that this was akin to the judge commenting hi>upon the evidence. We have found no cases on point in Louisiana jurisprudence, but have found similar cases from other jurisdictions.
The Kansas Court of Appeals examined the issue closely in State v. Rowray, 18 Kan.App.2d 772, 860 P.2d 40 (1993), in which the trial court had allowed the mother of two young victims (eight and six) to sit in close proximity to the victims during their testimonies. It determined that the majority of cases have found no reversible error in allowing a parent, relative, clergyman, or even the prosecutor to accompany a young victim during testimony. The primary consideration in such circumstances is balancing the interest of the State in having the testimony heard and protecting the witness against the possible prejudice to the defendant that might result from increased sympathy for the victim or the appearance of enhancing the victim’s credibility. See 82 A.L.R.4th 1038.
The trial court in this case already noted during argument its observation that the cross examination of the victim had already engendered a great deal of apparent sympathy for the victim. However, absent further showing on the record, we cannot say that allowing her guardian to stand behind Y.M.R. during the remainder of her cross examination was prejudicial to Defendant, as cross examination was abandoned at that point.
Louisiana Code of Evidence article 611 provides:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth; -
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
| ^Considering the control bestowed upon the trial court by La.Code Evid. art. 611, along with the sanctioning by other jurisdictions of a comfort person sitting with a child witness while the child testifies, we find the Defendant has failed to show the trial court abused its discretion in allowing *530 the victim’s guardian to sit behind the victim during her testimony.
Defendant also contests the sentence imposed by the trial court as excessive. The Louisiana Supreme Court has repeatedly admonished “that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case.” State v. Savoy, 11-1174, p. 5 (La. 7/2/12), 93 So.3d 1279, 1283 (citing State v. Walker, 00-3200, p. 2 (La. 10/12/01), 799 So.2d 461, 462; State v. Cook, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996); State v. Humphrey, 445 So.2d 1155, 1165 (La.1984)).
Even a sentence within the statutory range of sentencing can be unconstitutionally excessive if it shocks the court’s sense of justice or does not meaningfully contribute to acceptable penal goals. State v. Decuir, 10-1112 (La.App. 3 Cir. 4/6/11), 61 So.3d 782. In State v. Smith, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, writ denied, 03-562 (La. 5/30/03), 845 So.2d 1061, we articulated the factors that should be considered:
In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. State v. Smith, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, “it is well settled that sentences must be individualized to the particular offender and to the particular offense committed.” State v. Batiste, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge “remains in the best position to assess the aggravating and mitigating circumstances presented by each case.” State v. Cook, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.
In imposing sentence, the trial court noted that a presentence investigative report had been received and considered. The trial court noted that the victim was “particularly vulnerable” because of her age. Defendant had taken advantage of his position as a member of the victim’s household to perpetrate the offense. The offense had seriously traumatized the victim and her family. And Defendant had continued to steadfastly deny his culpability in the face of the victim’s positive identification of Defendant as the person who abused her.
Defendant filed a motion to reconsider his sentence, which the trial court denied. In denying the motion, the trial court also noted that the offense involved several incidents of abuse of the victim for which separate sentences were not imposed.
The crime of Indecent Behavior with a Juvenile, when the juvenile is under the age of thirteen, is punishable by imprisonment at hard labor of not less than two years and not more than twenty-five years, with at least two years to be served without benefit of probation, parole, or suspension of sentence. La.R.S. 14:81(H)(2). In State v. Fregia, 12-646 (La.App. 3 Cir. 12/5/12), 105 So.3d 999, we upheld the maximum sentence of twenty-five years for conviction of one count of Indecent Behavior with a Juvenile. The perpetrator in Fregia abused a four-year-old boy and a five-year-old girl over.the course of several months. His sentence was imposed pursuant to a plea agreement, and the defendant benefited greatly from the agreement. In State v. Patterson, 09-199 (La.App. 3 Cir. *531 11/4/09), 21 So.3d 1119, we upheld a twenty-year sentence handed to a defendant who attempted to coerce fellatio from his twelve-year-old victim, who escaped. The | ^perpetrator was a second-felony offender. Because the twenty-year sentence was less than half what defendant could have faced, and because of the heinous nature of his offense, we found that the sentence was not reversible.
Our colleagues on the Second Circuit Court of Appeal, in State v. Sanders, 49,241 (La.App. 2 Cir. 10/22/14), 151 So.3d 160, writ denied, 14-2536 (La. 1/16/15), 157 So.3d 1133, upheld a twenty-year sentence handed to a defendant who engaged in one incident of un-coerced sexual activity with his twelve-year-old victim.
In light of the tender age of the victim; her position of vulnerability as an immigrant child whose mother had been deported from this country, leaving her in the care of her mother’s boyfriend; the repeated nature of the abuse; and the effect the abuse has inflicted upon the victim, we cannot conclude that the sentence was excessive.
DECREE
The Defendant was not deprived of his right to confront his accuser in the trial court’s imposition of a time limit on his cross examination of the victim. Defendant’s counsel engaged in protracted examination of the victim before the limit was placed; further, Defendant’s counsel chose to discontinue his examination altogether after the limitation, which makes it difficult for us to conclude that complete cross examination could not be achieved during the time allotted. Similarly, allowing her guardian to stand behind the victim posed no undue prejudice to Defendant. The trial court must balance the interests of the State in having the testimony heard and protecting the witness against the possible prejudice to the defendant that might result from increased sympathy for the victim or the appearance of enhancing the victim’s credibility. Allowing the child’s guardian to stand behind her might increase the sympathy toward the victim, but | ifiposed little threat in terms of bolstering her credibility. On the other hand, the trial had already been forced to recess to allow the victim to compose herself after the lengthy cross examination. The victim’s age, vulnerability, and the repeated abuse inflicted upon her make the sentence imposed upon Defendant appropriate.
The Defendant’s conviction and sentence are affirmed.
AFFIRMED.
Cooks, J., dissents and assigns written reasons.

. In Van Arsdall, the Supreme Court found the trial court erred in refusing to allow defense counsel to cross-examine a State witness about an agreement he made with the State to dismiss an unrelated criminal charge in exchange for his testimony. The Supreme Court also found the error was subject to the harmless error analysis and remanded the case for a determination as to whether the error was harmless.