704 So.2d 1269 (1997)
STATE of Louisiana, Appellee,
v.
Tommy JOHNSON, Appellant.
No. 30078-KA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
Rehearing Denied January 15, 1998.
*1270 Kenneth A. Brister, Lk. Providence, and Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, for Appellant.
Richard Ieyoub, Attorney General, James D. Caldwell, District Attorney, George F. Fox, Jr., Assistant District Attorney, for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
PEATROSS, Judge.
Defendant, Tommy Johnson, was charged with attempted second degree murder in violation of LSA-R.S. 14:27 and LSA-R.S. 14:30.1. A jury found Defendant guilty of aggravated battery, a violation of LSA-R.S. 14:34, and the trial court sentenced Defendant *1271 to ten years at hard labor. From this conviction and sentence, Defendant appeals, urging the following as error: (1) the alleged insufficiency of the evidence to support the conviction of aggravated battery; (2) the trial court's failure to grant Defendant's motion for judgment of acquittal; (3) the trial court's admission of allegedly inadmissible evidence relating to a surveillance video tape; (4) the trial court's imposition of an allegedly harsh and unconstitutionally excessive sentence; (5) the trial court's imposition of a sentence allegedly constituting cruel and unusual punishment; and (6) the trial court's denial of Defendant's motion to reconsider sentence. For the following reasons, we affirm Defendant's conviction and sentence.

FACTS
On the evening of February 9, 1996, at the Key Station convenience store in Lake Providence, Louisiana, Defendant attempted to steal two bottles of gin. Ali Ahmed, the store's owner, confronted Defendant and attempted to take the bottles from him. The two men scuffled and Ahmed retrieved the bottles, but ripped Defendant's shirt off in the struggle. Defendant exited the store and the police were telephoned by a store employee. Minutes later, Defendant, still shirtless, returned to the store. Defendant shouted expletives and fired two shots from a pistol at Mr. Ahmed. Defendant again exited the store. Mr. Ahmed sought cover beneath a counter and grabbed his own gun. He then chased Defendant while firing his own gun a number of times. After the police arrived at the scene, Defendant again returned to the store to purportedly retrieve his shirt and was arrested. Two nine-millimeter Luger shells were found in the store's doorway. No bullet holes were found in the store. Defendant's weapon was never recovered.
A store surveillance video camera recorded the incident and a number of people, including police officers, viewed the video after the incident. Mr. Ahmed, however, inadvertently left the tape in the video cassette recorder, thereby allowing the pertinent portion to be taped over the following day. At trial, two police officers and Defendant's parole officer testified that they had viewed the video recording prior to its erasure. Each witness testified that the tape showed Defendant attempting to steal the bottles of liquor; the fight between Defendant and Mr. Ahmed; Defendant's exit and return to the store; Defendant firing two shots; and Ahmed returning fire.
At trial, Mr. Ahmed originally testified that he did not see Defendant's gun and did not see who fired the shots. Mr. Ahmed also estimated that ten people stood behind Defendant during this incident and that he was not sure if someone else could have fired the shots. Mr. Ahmed testified that he only saw the Defendant reach behind his back and that he then heard gunshots. Previously, at the preliminary hearing, Mr. Ahmed testified that he saw Defendant reach from behind, retrieve a small pistol and shoot. When the State recalled Mr. Ahmed to the witness stand during the trial and confronted him with these inconsistencies, Mr. Ahmed testified that he clearly saw Defendant shoot at him and that the reason he had wavered earlier in the trial was because he had been threatened with death if he did not exonerate Defendant.
Defendant was charged by bill of information with attempted second degree murder. Aggravated battery is listed by La.C.Cr.P. art. 814(A)(4) as a responsive verdict of attempted second degree murder. The trial court gave the jury instructions, which included aggravated battery as a legislatively responsive verdict which the jury could return and a definition of the crime of aggravated battery. The jury returned a verdict of guilty of aggravated battery, in violation of LSA-R.S. 14:34. The trial court sentenced Defendant to the statutory maximum of ten years.

DISCUSSION
Responsive Verdict, Sufficiency of the Evidence and Motion to Acquit
In his first assignment of error, Defendant argues that the evidence is insufficient to justify the jury's responsive verdict of guilty of aggravated battery. Defendant contends, and both the State and trial court *1272 conceded at trial, that an "aggravated battery," by definition, did not occur in this instance because no physical contact occurred between Defendant and the victim. For this reason, in his second assignment of error, Defendant claims the trial court erred in its denial of his motion for judgment of acquittal.
Defendant made no objection to the jury instructions recited by the trial court and the jury found Defendant guilty of aggravated battery. Defendant motioned the trial court for judgment of acquittal based on the lack of evidence supporting a conviction of aggravated battery, but his motion was denied.
The basis of Defendant's argument is that, under the facts of this case, aggravated battery was not an appropriate verdict because that offense is committed only under certain circumstances, none of which were present in this case. Aggravated battery is defined as a battery committed with a dangerous weapon. LSA-R.S. 14:34. A battery is "the intentional suse of force or violence upon the person of another ..." LSA-R.S. 13:33.
Even if an offense is legislatively designated as responsive by La.C.Cr.P. art. 814, a defendant may timely object to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict. La.C.Cr.P. art. 814(C).[1] If the court overrules the objection and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983).
Absent a contemporaneous objection, however, a defendant cannot complain if the jury returns a legislatively approved responsive verdict (such as aggravated battery in the instant case), even where there is insufficient evidence to support such a verdict, provided that the evidence is sufficient to support the charged offense. State v. Schrader, 518 So.2d 1024 (La.1988); State ex rel. Elaire v. Blackburn, supra. In Elaire, the Louisiana Supreme Court stated:
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object.
In the present case, there is nothing in the record to evidence that Defendant requested the trial court to exclude aggravated battery as a responsive verdict. Defendant remained silent to this issue during jury instruction, and both before and after the jury returned with its verdict. Defendant raised this issue through a motion for judgment of acquittal only after the jury instruction and rendering of verdict. As the State appears to concede on appeal, and stipulated at trial, the facts of this case do not establish the elements of aggravated battery. Since Defendant did not object, however, he is entitled to relief only if the evidence is insufficient to support the charged offense of attempted second degree murder. La.C.Cr.P. art. 814(C).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's *1273 testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al, 628 So.2d 27 (La.App. 2d Cir.1993); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir. 1986); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.1984), writ denied, 462 So.2d 189 (La.1984).
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992).
Second degree murder is defined as:
The killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnaping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1.
The elements of an attempted offense are as follows:
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. LSA-R.S. 14:27.
Specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10.
Since none of the enumerated aforementioned crimes under LSA-R.S. 14:30.1 were perpetrated by Defendant in conjunction with the shooting, in order to prove the crime of attempted second degree murder in this case, the State had to establish beyond a reasonable doubt that Defendant actively desired to kill the victim.
In the instant case, the evidence is sufficient to support the charge of attempted second degree murder. The evidence revealed that after being forcibly escorted out of the victim's store for attempting to steal two bottles of liquor, Defendant returned yelling expletives and fired at least two shots into the store. The victim testified that he did see Defendant take out a pistol and shoot at him. In addition, the incident was captured by an in-store camera on videotape, which was accidentally erased after being viewed by three non-party witnesses who testified at trial to seeing these events clearly on the videotape in the moments after Defendant's arrest.
Clearly, based on the uncontroverted testimony of these witnesses and the testimony of the store's owner, there was sufficient evidence for a reasonable jury to have found that Defendant intended to kill the victim. For whatever reason, the jury chose to return the apparent "compromise" verdict of guilty of aggravated battery. After reviewing the entirety of the trial testimony in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of attempted second degree murder proven beyond a reasonable doubt. Accordingly, because the evidence was sufficient to support the charged offense of attempted second degree murder, these assignments of error are without merit.

Video Surveillance Tape
Defendant contends the trial court committed error when it allowed testimony on the contents of an in-store surveillance videotape which was erased prior to trial. The State elicited testimony from three people who testified that on the night of the shooting, they, along with store owner Mr. Ahmed, viewed this videotape of Defendant's alleged activities. The videotape was inadvertently recorded over the following day and no longer exists.
*1274 The admissibility of a relevant videotape is well settled as being largely within the discretion of the trial judge. Lafleur v. John Deere Co., 491 So.2d 624 (La.1986); United States Fidelity & Guaranty Co. v. Hi-Tower Concrete Pumping Service, 574 So.2d 424 (La.App. 2d Cir.), writs denied, 578 So.2d 136 (La.1991). The trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent's case and whether it will aid the jury's understanding. Against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. La.C.E. arts. 401-403; U.S. Fidelity v. Hi-Tower, supra.
Here, we must specifically decide the admissibility and relevancy of testimony concerning the contents of a lost document, i.e. the Key Station surveillance videotape. While La.C.E. art. 1002 requires the original document to prove the contents therein, under La.C.E. art. 1004(1), the original of a writing, recording or photograph is not always required to prove its contents, and other evidence of the contents of a writing, recording or photograph is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.
The "best-evidence" rule is to be applied sensibly and with reason. State v. Dilworth, 358 So.2d 1254 (La.1978); and State v. Cody, 446 So.2d 1278 (La.App. 2d Cir.1984). Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Moore, 419 So.2d 963 (La.1982); State v. Gaskin, 412 So.2d 1007 (La.1982); and State v. Coleman, 486 So.2d 995 (La.App. 2d Cir.1986). The "best evidence" rule does not mandate production of an original taped statement when testimony shows that the original is not available and there is no bad faith by the state. State v. McDonald, 387 So.2d 1116 (La.1980), cert. denied, 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980).
This court applied these standards in State v. Hayes, 585 So.2d 619 (La.App. 2d Cir. 1991). In Hayes, this court found no error in the trial court allowing into evidence the transcription of defendant Hayes' statement to the police when the audiotape had apparently been destroyed and defendant could show no bad faith or prejudice. This court held in Hayes that the "best evidence" rule does not mandate the production of an original taped statement when testimony shows that the original is not available and there is no bad faith by the state.
In the present case, Lake Providence Chief of Police Timothy Middlebrook, police officer Edward Kennedy, and Defendant's parole and probation agent, J.D. Allen, all testified that they had viewed the videotape the night of the incident involving Defendant. Each witness testified that the tape showed the shirtless defendant yelling expletives and then firing a pistol into the store from the doorway. Mr. Ahmed testified that the video tape of these events were inadvertently deleted when the tape was recorded over the next day. The record does not show or suggest bad faith or prejudice on Mr. Ahmed's part in inadvertently permitting the evidence to be erased. Defendant suggests, in brief, hypotheses of bad faith, but offers no factual basis to any intentional wrongdoing on Mr. Ahmed's part. The three witnesses testified to the incriminating content of the videotape and Defendant's counsel enjoyed the benefit of a thorough cross-examination of each witness.
The testimony of the police officers and Defendant's parole officer as to the inculpatory content of the videotape of Defendant's activities, coupled with Mr. Ahmed's account, casts doubt as to the veracity of Defendant's alleged but unproven innocent activities. The trial court found "specifically that the tape was not intentionally or [sic] destroyed in bad faith." Since the trial court did not find Mr. Ahmed in bad faith, this court's holding in State v. Hayes, supra, necessitates the finding that the testimonies of these witnesses to the contents of the videotape were *1275 admissible. This assignment of error is without merit.

Excessive Sentence, Motion to Reconsider
Defendant assigns as error the excessiveness of the trial court's imposition of the maximum sentence for aggravated battery of ten years at hard labor. LSA-R.S. 14:34. Defendant timely filed a motion to reconsider sentence, alleging excessiveness grounds.
As a general rule, maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991). The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La.App.2d Cir. 9/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Henton, 28,576 (La. App.2d Cir. 9/25/96), 682 So.2d 777. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (1984); State v. Walker, supra.
Defendant was convicted of aggravated battery, for which LSA-R.S. 14:34 provides a sentence of not more than $5,000 in fines nor a sentence exceeding ten years, or both. The presentence investigation ordered by the trial court noted Defendant's "volatile and dangerous nature" and his numerous arrests that do not appear in his official criminal record. The presentence investigation also revealed Defendant's education, work history and family history.
The trial court specifically enumerated and analyzed the factors listed in La.C.Cr.P. art 894.1 in its reasons for imposing sentence. In a lengthy and thorough sentencing colloquy, the trial court used the presentence investigation report to explain the ten-year maximum sentence he imposed, as well as the ramifications of future criminal conduct for this career criminal defendant under the habitual offender provisions.
The trial court noted Defendant's long criminal history. The presentence investigation revealed that Defendant had pled guilty to aggravated battery in 1987 and was sentenced to one year at hard labor. He was arrested in 1988 on a charge of attempted arson and the charge was later dropped. He was found guilty of misdemeanor theft in 1988. In 1989, he was arrested for simple assault, resisting an officer and disturbing the peace. He received a fine and 60 days in jail. In 1990, he was arrested in Baton Rouge for simple burglary, attempted forcible rape, attempted kidnaping and resisting *1276 an officer. He pled guilty to sexual battery in a plea bargain agreement and received a sentence of five years at hard labor. The trial court noted that Defendant is a third felony offender who could have been charged and sentenced as such to life imprisonment.
The trial court also noted the severity of Defendant's offense of firing a gun into a convenience store, therefore knowingly creating a risk of harm to others. The trial court stated that "this crime could have resulted in the death of several persons." The trial court also found that based on the criminal record of Defendant and his proclivity to commit crimes, correctional treatment in a custodial environment was necessary. The trial court concluded that Defendant is a repeat offender who had been punished in the past with only mild sentences.
The trial court's sentencing was neither arbitrary nor without basis. His thorough articulation and consideration of La.C.Cr.P. art. 894.1 in this record reveals no abuse of discretion. For this reason, Defendant's fourth, fifth and sixth assignments of error are without merit.

CONCLUSION
For the above reasons, Defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] La.C.Cr.P. art 814(C) states in pertinent part:

Upon motion of the state or the defendant, or on its own motion, the court shall exclude a responsive verdict listed in Paragraph A if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the state, is not sufficient reasonably to permit a finding of guilty of the responsive offense.