# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2023 KA 0360

# STATE OF LOUISIANA

# VERSUS

# ANDRE V. GRIFFIN

*Judgment Rendered:*  **JAN 3 0 2024**

\* \* \* \* \* \* \* \*

**Appealed from the**
**18th Judicial District Court**
**In and for the Parish of Pointe Coupee**
**State of Louisiana**
**Case No.  83, 366-F c/w 83,365-F**

**The Honorable J. Kevin Kimball, Judge Presiding**

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Chad Aguillard | Counsel for Plaintiff/Appellee |
| Kristen Canezaro | State of Louisiana |
| Nishant Bhushan | |
| Ali Meronek | |
| Assistant District Attorneys | |
| New Roads, Louisiana | |
| Terri Russo Lacy | |
| Assistant District Attorney | |
| Port Allen, Louisiana | |
| Antonio M. "Tony" Clayton | |
| District Attorney | |
| | |
| Holli Herrle-Castillo | Counsel for Defendant/Appellant |
| Louisiana Appellate Project | Andre V. Griffin |
| Marrero, Louisiana | |

\* \* \* \* \* \* \* \*

**BEFORE: GUIDRY, C.J, CHUTZ, AND LANIER, JJ.**

**LANIER, J.**

The defendant, Andre Griffin, was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1 (Count 1), one count of first degree feticide, a violation of La. R.S. 14:32.6 (Count 2), and one count of attempted second degree murder, a violation of La. R.S. 14:27 & La. R.S. 14:30.1 (Count 3). He entered a plea of not guilty and, following a jury trial, was found guilty as charged on each count.[1] The trial court sentenced the defendant to life in prison without benefit of parole, probation, or suspension of sentence on count one, fifteen years at hard labor on count two, and fifty years at hard labor without benefit of parole, probation, or suspension of sentence on count three, with each sentence to be served consecutively. The defendant now appeals, designating five assignments of error. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

On February 14, 2019, at 1:45 a.m., officers with the Pointe Coupee Parish Sheriff's Office received a 911 call from Kendell Mingo regarding a drive-by shooting at 15134 Russell Lane. Mingo and his pregnant girlfriend, Aerial Edwards, were asleep in the living room when Mingo awoke to the sound of gunshots.[2] Four bullets were fired into the home, one of which struck Edwards in the abdomen, killing both her and her unborn child.

Officers learned through the course of their investigation that approximately a week prior to the shooting, Darion Springer stole Mingo's gun, an AK-47. In response, Mingo's brother threatened Springer and his family. Then, in the early morning hours of February 14, 2019, and in an effort to retaliate for the threats

---

[1] The defendant was tried simultaneously with his co-defendant, Treveon Robinson. Also charged in this matter were co-defendants Nicholas Robinson, Darion Springer, and Jericho Hamburg.

[2] The names of both Kendell Mingo and Aerial Edwards are spelled in various ways throughout the record. The spellings reflected in the grand jury indictment are used herein.

2

made by Mingo's brother, Springer, Treveon and Nicholas Robinson, Jericho Hamburg, and the defendant drove to Russell Lane to find Mingo. The defendant was driving, with Treveon Robinson in the front passenger seat, and Springer, Hamburg, and Nicholas Robinson in the back. When they saw Mingo's car in the driveway, Springer, Treveon, and the defendant fired guns at the home. According to Springer, Treveon and the defendant fired multiple shots; however, his gun jammed when he attempted to fire it.

Pursuant to the investigation, officers issued arrest warrants for Treveon and Nicholas Robinson, Darion Springer, Jericho Hamburg, and the defendant for the murder of Edwards and the death of her unborn child, and the attempted murder of Mingo.

## ASSIGNMENT OF ERROR ONE

In his first assignment of error, the defendant argues that the trial court erred in dismissing a juror based on his status as a convicted felon where current law limits disqualification to those jurors who were indicted, incarcerated, or on probation or parole for a felony offense within five years of the person's jury service.

An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. **State v. Mills**, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 486, writs denied, 2014-2027 (La. 5/22/15), 170 So.3d 982 and 2014-2269 (La. 9/18/15), 178 So.3d 139. The question of a juror's qualifications is addressed to the sound discretion of the trial judge. Therefore, the trial court's rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that

discretion. **State v. Folse**, 2018-0152 (La. App. 1st Cir. 9/21/18), ___ So.3d ___, 2018 WL 4520465, *6, writ denied, 2018-1740 (La. 4/22/19), 268 So.3d 296.

La. Code Crim. P. art. 401 sets forth general juror qualifications with regard to citizenship, residence, age, ability, and criminal history. Prior to its amendment in 2021, Art. 401(A)(5) provided that, in order to qualify to serve as a juror, a person must "[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor." See 2010 La. Acts No. 438, § 1. The statute was amended in August of 2021 and now provides:

> A. In order to qualify to serve as a juror, a person shall meet all of the following requirements:
>
> ***
>
> (5) Not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

La. Code Crim. P. art. 401(A)(5); 2021 La. Acts, No. 121, § 1.

Trial commenced on March 28, 2022. During jury selection, the trial court read aloud the juror qualifications and in doing so, referenced the previous provision of Art. 401(A)(5). The trial court stated, "[y]ou must not be under indictment for a felony, nor have been convicted of a felony for which you have not been pardoned by the governor." Potential juror Joseph Stoute then told the court that over ten years prior, when he was nineteen, he was convicted of a felony and served two years of probation. The trial court discussed the recently revised qualification provisions, noting its understanding of the law was that a pardon was still required. The court then deferred the matter and refrained from dismissing Stoute at that point.

On appeal, the defendant contends that the record does not mention Stoute again, and that he seemed to have been dismissed from the jury based on the court's erroneous statement of the current law. However, the record reflects otherwise. After the trial court's discussion regarding juror qualifications, the

record shows that Stoute was then assigned to jury panel four. However, the parties never reached jury panel four during voir dire because a jury was selected and sworn from jury panels one, two, and three. Accordingly, although the trial court recited an outdated provision of juror qualifications under Art. 401(A)(5), the trial court nevertheless refrained dismissing Stoute. While the record is silent as to how this transpired, the record clearly shows that Stoute was appropriately placed on a jury panel and the defendant was not prejudiced by the trial court's initial error. This assignment of error is without merit.

## ASSIGNMENT OF ERROR TWO

In his second assignment of error, the defendant argues that the trial court erred in denying his motion to continue. Specifically, the defendant contends that he was entitled to a continuance after the State provided him with over one thousand pages of additional discovery three days before trial was set to commence.

The purpose of pretrial discovery procedures is to eliminate unwarranted prejudice to a defendant that could arise from surprise testimony. **State v. Elie**, 2005-1569 (La. 7/10/06), 936 So.2d 791, 802. Discovery procedures enable a defendant to properly assess the strength of the State's case against him in order to prepare his defense. **State v. Herron**, 2003-2304 (La. App. 1st Cir. 5/14/04), 879 So.2d 778, 787. If a defendant is lulled into a misapprehension of the strength of the State's case through a failure of the prosecution to timely or fully disclose and the defendant suffers prejudice, basic unfairness results that constitutes reversible error. **State v. Harris**, 2000-3459 (La. 2/26/02), 812 So.2d 612, 617. The State's failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant. **State v. Selvage**, 93-1435 (La. App. 1st Cir. 10/7/94), 644 So.2d 745, 750, writ denied, 94-2744 (La. 3/10/95), 650 So.2d 1174.

5

Regarding a motion to continue, La. Code of Crim. P. art. 707 provides:

A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.

Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.

The trial court has much discretion in deciding whether to grant or deny a motion for a continuance, and a reviewing court will not disturb such a determination absent a clear abuse of that discretion and a specific showing of prejudice caused by the denial. **State v. Strickland**, 94-0025 (La. 11/1/96), 683 So.2d 218, 229; see also La. Code Crim. P. art. 712. The denial of a motion for continuance, which motion is based on the ground of counsel's lack of preparedness, does not warrant reversal unless counsel demonstrates specific prejudice resulting from the denial or unless the preparation time is so minimal as to call into question the basic fairness of the proceeding. **State v. Charrier**, 2012-0245 (La. App. 1st Cir. 9/21/12), 2012 WL 4335920, *2 (unpublished), writ denied, 2012-2309 (La. 4/12/13), 111 So.3d 1018.

On March 25, 2022, three days prior to commencement of trial, the defendant received a significant amount of additional discovery from the State. This discovery included the fact that Hamburg would testify as a State witness. It also included police reports detailing multiple incidents wherein Mingo was the target of a shooting and/or the victim of an attempted murder, and reports indicating that bullet casings found in crime scenes in East Baton Rouge Parish and Ascension Parish matched the casings recovered in the instant case. Finally, it contained over one-thousand pages of cell phone data and digital evidence from Hamburg's cell phone. Based on the volume of evidence and his inability to properly review it prior to trial, the defendant filed a motion to continue.

6

After a hearing, the trial court denied the motion. In so doing, the trial court noted that the defendant did not allege that the State intentionally withheld evidence, and found that the State handed over the information as soon as it was in the State's possession. The defendant then filed a supervisory writ of review to this court, which was denied. **State v. Griffin**, 2022-0324 (La. App. 1st Cir. 3/30/22), 2022 WL 951375 (unpublished).

On appeal, the defendant argues that while the discovery was not withheld in bad faith, the late disclosure was nonetheless prejudicial. Specifically, the defendant contends that he was deprived of the opportunity to review and investigate the new information, and unable to adequately prepare his defense. Accordingly, the defendant contends that the trial court erred in denying his motion to continue.

The defendant herein has failed to establish that he was prejudiced by the late discovery such that the interests of justice required the trial court grant his motion to continue. At no point has the defendant alleged that the State intentionally withheld evidence, and in his own continuance motion, the defendant acknowledged that not all of the evidence provided was relevant to his case. The defendant also acknowledged that even though the State did not confirm until a few days prior to trial that Hamburg would be called as a State witness, he had been aware of this possibility for some time.

Moreover, the record reflects that the defendant in fact utilized the information provided by the State to advance his case. The defendant was able to cross-examine Mingo with regard to the unrelated shooting incidents in which Mingo was the target, thus establishing that there were individuals other than the defendant with a demonstrable motive to shoot Mingo. The defendant was likewise able to cross-examine law enforcement officers regarding evidence that a gun used in this case was also linked to several other incidents which occurred after the

7

defendant was arrested, thus advancing the theory that someone other than the defendant committed the instant offense.

The defendant failed to show that he was prejudiced by the delayed discovery, and thus that he was entitled to a continuance. Accordingly, we find that the trial court did not abuse its discretion in denying the defendant's motion to continue, and this assignment of error is without merit.

### ASSIGNMENT OF ERROR THREE

In his third assignment of error, the defendant argues that the trial court erred in allowing testimony regarding the contents of a surveillance video which was destroyed prior to trial.

La. Code Evid. art. 1002 requires the original document to prove the contents therein. However, under La. Code Evid. art. 1004(1), the original of a recording is not always required to prove its contents, and other evidence of the contents of the recording is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. See **State v. Hines**, 2011-2082 (La. App. 1st Cir. 6/8/12), 2012 WL 2061513, *5 (unpublished).

This standard, known as the "best evidence" rule, is to be applied sensibly and with reason. Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. The "best evidence" rule does not mandate production of an original recording when testimony shows that the original is not available and there is no bad faith by the State. See **State v. Johnson**, 30,078 (La. App. 2d Cir. 12/10/97), 704 So.2d 1269, 1274, writ denied, 98-0382 (La. 6/26/98), 719 So.2d 1054, citing **State v. McDonald**, 387 So.2d 1116 (La. 1980), cert. denied, 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980).

At trial, the defendant's theory was that another person, primarily Nigel Gremelsbacker, was responsible for the shooting on Russell Lane. Sergeant Perry

Lambert, with the Pointe Coupee Sheriff's Department, testified that although Nigel was an initial suspect, he was eventually excluded based on information obtained throughout the investigation, including interviews, phone records, and surveillance videos.

The defendant then asked for a sidebar, noting that he had not received any video surveillance in discovery. The State indicated that shortly before Sgt. Lambert was called to testify, he provided information to the State that he obtained surveillance video footage during his investigation and that this video footage was stored on a hard drive which was then inadvertently dropped and destroyed by another officer. The defendant then moved for a mistrial. After a hearing on the matter, the trial court denied the defendant's motion for a mistrial, finding that the State did not purposefully destroy or withhold the surveillance footage. The trial court further ruled that Sgt. Lambert could testify as to what the surveillance footage showed.

Sgt. Lambert then testified that he obtained surveillance video from a residence on Cline Drive, located in the same general area as Russell Lane. Sgt. Lambert compared the time at which Nigel's vehicle passed the Cline Drive residence, the distance between Cline Drive and Russell Lane, and the time of the shooting as reported by Mingo's 911 call. Based on those factors, Sgt. Lambert concluded that Nigel could not have driven from Cline Drive to Russell Lane and committed the drive-by shooting within the given time frame.

On appeal, the defendant contends that he was prejudiced by the State's use of Sgt. Lambert's testimony to prove Nigel's location at the time of the shooting, where the jury was unable to view the video footage and determine for itself whether Nigel would have had time to commit the shooting. We disagree.

Herein, the original video footage was clearly not available, and the trial court specifically found that the footage was not destroyed in bad faith by the State

or the sheriff's office. Accordingly, the production of the original footage was not required. See **Johnson**, 704 So.2d at 1274. Moreover, whether the videotapes may have been more reliable than Sgt. Lambert's testimony goes to the weight of that evidence, rather than its admissibility. See **Hines**, 2012 WL 2061513 at *6. Finally, as Sgt. Lambert testified, the surveillance footage was merely corroborative of other evidence which tended to exclude Nigel as a suspect, including phone records, interviews, and Springer's eye-witness statement inculpating the defendant. Accordingly, even though the "best evidence" was not introduced, the defendant failed to show that he was prejudiced by Sgt. Lambert's testimony regarding that evidence, and we find no error in the trial court's ruling. This assignment of error is without merit.

## ASSIGNMENT OF ERROR FOUR

In his fourth assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial when the State, after being informed that a witness planned to invoke his fifth amendment right against self-incrimination, nevertheless called that witness to testify in the presence of the jury.

La. Code Crim. P. art. 775 requires a mistrial on motion of the defense when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" A mistrial is a drastic remedy that should only be declared upon a clear showing of prejudice by the defendant. **State v. Cowart**, 2022-1318 (La. App. 1st Cir. 6/2/23), 369 So.3d 887, 890. The determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. **State v. Dardar**, 2021-0860 (La. App. 1st Cir. 2/25/22), 340 So.3d 1110, 1119, writ denied, 2022-00533 (La. 5/24/22), 338 So.3d 1192.

In all criminal cases, a person has a privilege against self-incrimination and "shall [not] be compelled to give evidence against himself." See U.S. Const.

amend. V; La. Const. art. I, § 16; La. R.S. 15:276. Claims of privilege are preferably determined outside the presence of the jury since the jury may give undue weight to such a claim of privilege. See **State v. Wille**, 559 So.2d 1321, 1337 (La. 1990). It is impermissible to knowingly call a witness who will assert a privilege, solely for the purpose of impressing upon the jury the fact that the privilege is being claimed. See **State v. Haddad**, 99-1272 (La. 2/29/00), 767 So.2d 682, 686, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001).

Throughout the trial, Nicholas Robinson was identified as one of the individuals involved in the shooting on Russell Lane. During an earlier bench conference, defense counsel alerted the court that Nicholas's attorney was in the courtroom and that Nicholas intended to invoke his right to remain silent if called to testify. The defendant argued that it would be inappropriate for the State to call him to the witness stand and have him assert his privilege in front of the jury. The trial court agreed, noting that if the State knew Nicholas planned to invoke his privilege, there was no reason to do so in the jury's presence.

At the conclusion of Hamburg's testimony and within the presence of the jury, the State called Nicholas as a witness. Defense counsel asked for a sidebar and lodged an objection, noting that the State knew Nicholas would assert his Fifth Amendment privilege. Nicholas's attorney confirmed to the court that he informed the State that Nicholas would invoke his right not to testify prior to the State calling Nicholas to the stand. Defense counsel then moved for a mistrial, arguing that Nicholas was paraded through the courtroom during another witness's testimony to suggest to the jury that Nicholas's eventual invocation of his right not to testify was an indication of his guilt, and by extension the defendant's guilt, thereby prejudicing the defendant.

Relying on **State v. Edwards**, 419 So.2d 881 (La. 1982), the trial court found that it would be improper for the State to swear in a witness for the sole

purpose of forcing that witness to invoke his right to silence in front of the jury.[3] However, the trial court noted that although the State called his name, Nicholas was never sworn in as a witness, nor was he made to invoke his privilege in the presence of the jury. Accordingly, the trial court denied the defendant's motion for mistrial.

Herein, it is clear from the record that Nicholas's intent to invoke his Fifth Amendment privilege was well known to the State. The State then brought him into the courtroom and called him as a witness, within the presence of the jury, regardless of that fact. Although we find the State's tactics both improper and concerning, we cannot say that such action warranted a mistrial. See **Edwards**, 419 So.2d at 892, quoting **State v. Berry**, 324 So.2d 822, 830 (La. 1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976) ("It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege.") Where Nicholas ultimately invoked his right to remain silent outside the presence of the jury, the defendant failed to show that the State's conduct was so prejudicial as to make it impossible for him to obtain a fair trial, as required for a mistrial under La. Code Crim. P. art. 775. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion for mistrial, and this assignment of error is without merit. See **State v. Victores**, 486 So.2d 897, 899-00 (La. App. 1st Cir. 1986).

## ASSIGNMENT OF ERROR FIVE

---

[3] In **Edwards**, the Louisiana Supreme Court found that a defendant could not compel witnesses to invoke their Fifth Amendment rights before the jury in order for the trier of fact to draw an inference from the invocation. The court noted that it was clear from the record that the defendant was aware that the witnesses would not offer any testimony, and the defendant wished to call them solely for the purpose of having them invoke their privilege in front of the jury. **Edwards**, 419 So.2d at 891-93.

12

In his final assignment of error, the defendant contends that the trial court erred in denying his motion for mistrial after the trial court allowed a witness to testify regarding a statement made by the co-defendant, in which the defendant's guilt was directly implicated.

The Sixth and Fourteenth Amendments to the United States Constitution, and Article I, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. **State v. Dressner**, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137-38, cert. denied, 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011); **State v. McIntosh**, 2018-0768 (La. App. 1st Cir. 2/28/19), 275 So.3d 1, 6, writ denied, 2019-00734 (La. 10/21/19), 280 So.3d 1175. The Confrontation Clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine witnesses against him." La. Const. art. I, § 16; **State v. Robinson**, 2001-0273 (La. 5/17/02), 817 So.2d 1131, 1135. Confrontation means more than the ability to confront the witnesses physically. Its main and essential purpose is to secure for the opponent the opportunity of cross-examination. **Id.** Cross-examination is the primary means by which to test the believability and truthfulness of the testimony and has traditionally been used to impeach or discredit the witness. **Id.**

In **Bruton v. United States**, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court found that a defendant is deprived of his sixth amendment right of confrontation when the facially incriminating confession of a non-testifying co-defendant is introduced at trial. In **Bruton**, the defendant was implicated on a federal charge of armed postal robbery by a confession made to the postal inspector by his co-defendant, which was then introduced into evidence. The co-defendant did not testify at the joint trial and the defendant had not confessed. **Id.** 391 U.S. at 124-26, 88 S.Ct. at 1621-22. **Bruton** held that, "because of the substantial risk that the jury, despite instructions to the contrary,

13

looked to the incriminating extrajudicial statements in determining [defendant's] guilt, admission of [co-defendant's] confession in this joint trial violated [defendant's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." **Id.** 391 U.S. at 126, 88 S.Ct. at 1622.

In **Crawford v. Washington**, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court found that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." **Id.** 541 U.S. at 68-69, 124 S.Ct. at 1374. Accordingly, the Court held that out-of-court, testimonial statements are barred under the Confrontation Clause, unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine him. **Id.** 541 U.S. at 68-69, 124 S.Ct. at 1374. While not fully defined by the court, **Crawford** noted that testimonial statements included those "made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." **Id.** 541 U.S. at 51-52, 124 S.Ct. at 1364.

Herein, Sgt. Lambert testified that while Nigel Gremelsbacker and Treveon were both incarcerated at the Pointe Coupee Parish Jail (PCPJ), Sgt. Lambert requested that PCPJ's warden place Nigel and Treveon in the same dorm, hoping that because the two knew each other, Treveon would provide Nigel with information on the instant offense. Sgt. Lambert believed that Treveon might tell Nigel what happened on Russell Lane, and that Nigel, in return, might give that information to law enforcement.

At the defendant's joint trial with Treveon, Nigel testified that while he and Treveon were both incarcerated at PCPJ, Treveon confessed and told him that on the night of the shooting, the defendant was driving, and Treveon was sitting in the passenger seat. The defendant then interrupted the testimony and requested a

14

sidebar wherein he argued that Nigel's testimony was improper under **Bruton** because it constituted the introduction of a co-defendant's confession, which directly implicated the defendant.[4] Moreover, because the declarant, co-defendant Treveon, could not be forced to testify in the proceeding, the defendant's right to cross-examine his accusers was violated. The defendant then moved for a mistrial.

The trial court initially found that Nigel's testimony regarding Treveon's statement was inadmissible under **Bruton**, but not unduly prejudicial. The trial court then denied the defendant's motion for mistrial and offered to admonish the jury to disregard the statement. In response to the trial court's ruling, the State argued, pursuant to **State v. Massey**, 2011-357 (La. App. 5th Cir. 3/27/12), 91 So.3d 453, writ denied, 2012-0991 (La. 9/21/12), 98 So.3d 332, that **Bruton** applies only to those statements which are testimonial under **Crawford**.

After a brief recess, the trial court reiterated its denial of the defendant's motion for mistrial but then reversed its previous ruling on the statement's admissibility, finding that Treveon's statement was non-testimonial, and thus the statement was admissible as **Bruton** did not apply. The trial court noted the defendant's objection but indicated it felt constrained by the case law to so rule.[5]

---

[4] The defendant also filed a Motion in Limine to prevent testimony regarding Treveon's statement to Nigel. Although the record is silent as to that motion's disposition, it appears from the discussion, *infra*, that the motion was denied.

[5] The trial court articulated its concerns by stating, at various times:

> I'll say this, my ruling is going to be my ruling. And I'm going to follow case law. I'm not going to say I agree with the case law. But based on the cases that were presented to me and the nature of the testimony, non testimonial, I feel compelled to rule a certain way even though I can't say I really under **Bruton** agree with it.

> ***

> [B]ased on these cases that I've been provided, I think his testimony is considered non testimonial, and I've got cases that tell [me] that **Bruton** doesn't apply. So, I guess I'm allowing it . . . I'm concerned what's going to happen on appeal, but that's my ruling.

Nigel's testimony then resumed, whereupon he repeatedly detailed that in his jailhouse conversation with Treveon, Treveon confessed that the defendant was driving while he was sitting in the passenger seat when he and the defendant fired upon Mingo's house on Russell Lane. On appeal, the defendant contends that the introduction of Treveon's statement to Nigel violated **Bruton** and his constitutional right to confrontation. We agree.

Treveon's out-of-court statement to Nigel, which directly implicated both himself and the defendant in the instant offense, is precisely the kind of statement **Bruton** forbids. **Bruton** unequivocally holds that the extrajudicial statement of a non-testifying co-defendant, which implicates the defendant and is admitted at a joint trial, violates the defendant's constitutional right of cross-examination secured by the confrontation clause of the sixth amendment. **Bruton**, 391 U.S. at 126, 88 S.Ct. at 1622. While Treveon's statement may have been admissible against himself as a statement against interest, the statement was inadmissible against the defendant as the defendant was precluded from calling Treveon, his co-defendant, to the witness stand and subjecting Treveon's statement to cross-examination. While the trial court reasoned, in part, that the defendant's Sixth Amendment right to confrontation was not violated because he was given the opportunity to cross-examine Nigel regarding Treveon's statement, this logic is flawed. Nigel did not make the incriminating statement. Nigel merely relayed Treveon's incriminating statement; thus, the issue was with the defendant's inability to confront Treveon, rather than Nigel.

Turning now to the question of whether Treveon's statement was non-testimonial under **Crawford** and thus admissible as an exception to **Bruton**, we find that the trial court's initial instinct was correct and its subsequent reliance on **Massey** misplaced. While **Crawford** limited its holding to statements which are testimonial in nature, the Supreme Court did not fully define the term, and we

think it unwise to use **Crawford**, a seminal case in protecting a defendant's fundamental right to confront witnesses against him, to water down the rule set forth in **Bruton**. Moreover, **Crawford** noted that testimonial statements included those "made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." **Crawford**, 541 U.S. at 51-52, 124 S.Ct. at 1364. There is nothing in the conversation between Nigel and Treveon which would make it unreasonable to believe that the conversation would not or could not be used at trial. In fact, Sgt. Lambert testified that he intentionally placed Nigel and Treveon in the same dorm while they were both incarcerated in order to facilitate the precise conversation to which Nigel then testified. Accordingly, it cannot be unreasonable to assume the statement could be available for trial, as the statement was orchestrated by law enforcement officials in order to generate incriminating evidence, which was, in fact, used at trial. Thus, we find that the statement at issue was testimonial in nature and therefore subject to the limitations set forth in **Crawford** and its progeny. We further reiterate that the trial court's reliance on **Massey**, which may be persuasive but not controlling, was misplaced, and we decline to follow the rule set forth therein. Had the State wished to use Treveon's statement to Nigel as evidence of Treveon's guilt, the State had the option to try the two men individually, and introduce Treveon's conversation as a statement against interest. Instead, the State opted, with the trial court's finding of admissibility, to introduce into the defendant's trial highly prejudicial evidence of Treveon's guilt to then be used by the jury as substantive evidence of the defendant's guilt.

Finding that the trial court erred in admitting Treveon's statement through Nigel's testimony, in contravention of both **Bruton** and **Crawford**, we now turn to whether the trial court erred in declining to grant a mistrial based on the statement's introduction. Louisiana Code of Criminal Procedure Article 775

provides, in pertinent part, that a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771. La. Code Crim. P. art. 771(2) provides:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> > (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
>
> In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

A mistrial under the provisions of La. Code Crim. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. **State v. Smith**, 2015-1624 (La. App. 1st Cir. 4/15/16), 2016 WL 1535168, *5 (unpublished), writ denied, 2016-0957 (La. 5/1/17), 220 So.3d 742. However, a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without abuse of that discretion. **Id.** Furthermore, the Louisiana Supreme Court has held that any error in the admission of hearsay is "cured" when an individual with personal knowledge provides testimony which corroborates the hearsay. **Id.** citing **State v. Lindsey**, 404 So.2d 466, 478-79 (La. 1981).

18

Here, we find no abuse of discretion in the trial court's denial of the defendant's motion for mistrial, and that the improper admission of hearsay testimony was cured through the cumulative eye-witness testimony of Springer and Hamburg, who testified before Nigel. Although Nigel testified that Treveon told him that the defendant was the driver and he was in the passenger seat when both he and the defendant opened fire on Mingo's house, this statement was reiterated by the testimony of both Springer and Hamburg, both of whom were also in the vehicle when the shooting occurred. Springer testified that while he was in the backseat of the vehicle, the defendant drove past Mingo's house and saw Mingo's car in the driveway. The defendant then turned his car around and pulled in front of Mingo's house, at which point the defendant and Treveon opened fire. Likewise, Hamburg testified that he was in the backseat of the vehicle when the defendant drove to Mingo's house, saw that Mingo's car was in the driveway, turned around, and Treveon and the defendant began shooting at the house. Based on the consistent eye-witness testimony of both Springer and Hamburg, we find that the defendant was not so substantially prejudiced by Nigel's testimony that he was denied the right to a fair trial. Nigel's testimony was cumulative, as the same information was introduced through two eye-witnesses who testified at trial and who were subject to cross-examination, thus curing the hearsay error. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion for mistrial, and, as such, this assignment of error lacks merit. See **Smith**, 2016 WL 1535168 at *6.

**CONVICTIONS AND SENTENCES AFFIRMED.**

19